UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BLUE CROSS & BLUE SHIELD OF | : | |
| RHODE ISLAND | : | |
| | : | |
| v. | : | C.A. No. 09-317S |
| | : | |
| JAY S. KORSEN and IAN D. | : | |
| BARLOW | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court is the Motion of Plaintiff Blue Cross & Blue Shield of Rhode Island ("BCBS") to remand this case to Rhode Island Superior Court. (Document No. 6). Defendants Jay S. Korsen and Ian D. Barlow ("Defendants") oppose the Motion. (Document No. 13). This Motion has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on October 19, 2009. For the reasons discussed below, I recommend that BCBS's Motion to Remand be GRANTED.

**Background**

BCBS commenced this action on June 17, 2009 by filing a Complaint against Defendants in Superior Court. BCBS amended its Complaint on June 30, 2009. On July 17, 2009, Defendants removed the case to this Court, and BCBS responded on August 5, 2009 by filing the instant Motion to Remand.

This case arises out of a claims dispute between BCBS, a health insurer, and two health care providers, Defendant Korsen, a Chiropractor; and Defendant Barlow, an Occupational Therapist. BCBS alleges that it entered into a Participating Physician Agreement with Korsen in 2001 and a Participating Provider Agreement with Barlow in 2003 (collectively the "Provider Agreements"). BCBS alleges that the Provider Agreements "required [Defendants] to submit claims for services provided by identifying

those services according to the 'Current Procedural Terminology' ('CPT')[1] Code Classification of Services." Am. Compl., ¶ 9.  BCBS further alleges that the Provider Agreements obligated Defendants "to use and apply accurate CPT Codes in their claims for compensation for services provided to BCBS subscribers." Id., ¶ 10.

BCBS claims that Defendants breached the Provider Agreements by submitting "claims to BCBS using CPT Codes that do not accurately state the service for which the claim was made." Id., ¶ 12. Specifically, BCBS asserts that Defendants submitted claims under the CPT for "mechanical traction services" when patients were not given such services but were instead "placed in motorized massage chairs or on motorized massage tables." Id.  BCBS states that the massage equipment used by Defendants did not provide mechanical traction and that it has never authorized the use of massage equipment for mechanical traction. Id., ¶ 13.  BCBS seeks reimbursement for over $400,000.00 in payments it made to Defendants for services rendered from 2003 through 2009 because they "falsely claim[ed] to have performed mechanical traction on patients." Id., ¶ 15; (Document No. 13-2 at p. 47). BCBS also alleges that Korsen breached his Provider Agreement with BCBS by attempting to make unauthorized charges directly to BCBS subscribers and attempting to terminate his Provider Agreement on less than sixty-days' written notice. Id., ¶¶ 16-17.  In addition to its breach of contract claim (Count I), BCBS brings a fraud claim against both Defendants (Count II), a defamation claim against Korsen (Count III) and a tortious interference with advantageous business relationships claim against Korsen (Count IV).

Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441 arguing that BCBS's claims "related to" an employee benefit plan and thus are preempted by the federal Employee Retirement

---

[1] CPT codes are a standardized set of numerical codes established by the American Medical Association to correspond to specific medical services and procedures performed by health care providers. See Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 324 (3rd Cir. 2007).  The Codes are designed to create a uniform description of medical services for a number of purposes including medical billing.

Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.  (See Document No. 1).  In particular, Defendants contend that "[b]ecause Plaintiff is demanding reimbursement from [them] based on its own interpretation and application of the terms and conditions of patient healthcare plans, such claims directly arise under ERISA as adverse benefit determinations and removal to this Court is required." (Document No. 1 at ¶ 5(e)).

After removing the case, each Defendant answered and counterclaimed.  (Document Nos. 10 and 11).  Defendants' counterclaims challenge BCBS's alleged "self-help" attempt to recoup the $400,000.00 by unilaterally withholding payments for unrelated, current services provided by Defendants to BCBS subscribers.  BCBS has moved to dismiss the counterclaims.  (Document No. 12).

**Discussion**

**A.      Standard of Review**

The removal statute, 28 U.S.C. § 1441, authorizes removal of a suit from state to federal court only where the federal court could have exercised original subject matter jurisdiction over the action in the first place.  Federal subject matter jurisdiction arises out of the existence of either diversity of citizenship (28 U.S.C. § 1332) or a federal question (28 U.S.C. § 1331).

Defendants do not allege diversity of citizenship.  They contend that removal was proper "since the underlying state law causes of action alleged by [BCBS] are completely preempted by [ERISA]." (Document No. 13-3 at p. 6).  "Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim."  Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 45 (1st Cir. 2008).  This concept has also been described as an exception to the well-pleaded complaint rule that the presence of federal question jurisdiction is generally evaluated by focusing on the face of the state court complaint and determining if a federal claim is plead.  Danca v. Private Health

Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). "To establish complete preemption, defendants must show that the state cause of action falls within the scope of ERISA § 502(a) [,29 U.S.C. § 1132(a), and is] properly characterized as an 'alternative enforcement mechanism' of ERISA § 502(a) or of the terms of an ERISA plan." Id. at 5 (citations omitted). "The fact that ERISA does not provide the *remedy* plaintiffs seek is not relevant; all that matters is that the *claim* be within the scope of § 502(a)." Id. at 5 n.4. Finally, removal statutes are "strictly construed" and the parties seeking removal, here Defendants, bear the burden of making a "colorable showing that a basis for federal jurisdiction exists." Id. at 4.

### B.    ERISA Preemption

The parties' preemption arguments focus on Count I which alleges a breach of the Provider Agreements. BCBS contends that Count I solely concerns Defendants' legal duties arising out of the Provider Agreements, specifically the obligation to submit claims using accurate CPT Codes and does not concern duties arising out of any ERISA-governed benefit plan. Defendants characterize the dispute as an "adverse benefit determination" under ERISA which requires interpretation of the terms of ERISA plans and seeks to compel the return of benefits paid out under ERISA plans. However, a close review of Defendants' brief reveals that they are attempting to use the argument of ERISA preemption to deny a monetary remedy to BCBS. In particular, Defendants argue that:

> While BCBSRI's only remedy for the alleged overpayment of benefits is an action for equitable relief under ERISA, that does not mean, of course, that its claim will grant it the relief it seeks. Courts have held, for example, that a claim for restitution under ERISA is only permissible if the funds can be easily traced and are not simply part of the general assets of a defendant. Yet that does not permit filing a state law claim as an alternative. It merely means that BCBSRI may not be able to force repayment of the funds, but will only be able to seek other relief, such as an order enjoining defendants to use proper billing codes.

(Document No. 13-3 at p. 16).

In my opinion, BCBS's description is the more accurate of the two.  BCBS's claim in Count I basically alleges that Defendants breached the Provider Agreements by submitting claims for services with the wrong CPT Code and seeks return of the payments made for such claims.[2]

The complete preemption analysis first requires the Court to determine if BCBS could have brought its claim in Count I under ERISA § 502(a).  See Aetna Health, Inc. v. Davila, 542 U.S. 200, 210 (2004); and Danca, 185 F.3d at 5-6.  Defendants contend that BCBS is an ERISA fiduciary and that its claim to recover benefits is effectively an action for equitable restitution under ERISA § 502(a)(3).  Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), authorizes a fiduciary to bring a civil action to enjoin any act or practice which violates any provision of the subchapter or the terms of the plan, or to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of the subchapter or the terms of the plan.

Defendants claim that BCBS is "clearly an ERISA fiduciary" because it has responsibility for administering its health care plans, including making coverage decisions.  See Pharmaceutical Care Mgmt. Assoc. v. Rowe, 429 F.3d 294, 300 (1st Cir. 2005) ("Under ERISA, a fiduciary is one who exercises discretionary authority or control in the management and administration of an ERISA plan.  29 U.S.C. § 1002(21)(A).").  In its Reply Brief, BCBS does not directly dispute that it is an ERISA fiduciary.  Rather, it contends that it does not "stand[ ] in an ERISA fiduciary relationship with the Defendants."  (Document No. 19 at p. 3).  BCBS's argument misses the mark.  While there is nothing presently before the Court alleging or suggesting a fiduciary relationship between BCBS and Defendants, Section 502(a)(3) does not limit a fiduciary's standing to sue only those with whom it has a fiduciary

---

[2] This description comports with the content of BCBS's April 20, 2009 demand letter to Defendants.  (Defs.' Ex. C; Document No. 13-2 at pp. 47-48).  In that letter captioned "claims review," BCBS advised Defendants that their massage chair and table "do not render traction" and that "[t]he use of CPT Code 97012, (Application Traction, Mechanical) is considered an intentional misrepresentation of the service."  Id.  BCBS also concluded that this resulted in an "overpayment" in excess of $400,000.00 over a six-year period.  Id.

relationship.  In fact, that makes no sense because the duty in a fiduciary relationship runs from the fiduciary to a beneficiary of such relationship and it is the beneficiary who is generally claiming a breach of duty by the fiduciary.  In addition, a fiduciary's obligations to a beneficiary may sometimes require the fiduciary to pursue third-party claims.  In its demand letter to Defendants, BCBS characterized its claims review as part of its "continuing efforts to address health care costs and fulfill our fiduciary duty to our members."  (Document No. 13-2 at p. 47).  In other words, a fiduciary duty to monitor claims activity and to ensure that members' premium dollars are prudently spent and recovered if wrongfully paid out.  See Blue Cross and Blue Shield of Alabama v. Weitz, 913 F.2d 1544, 1545 (11th Cir. 1990) (finding that Blue Cross, "in determining claim eligibility, making payments, and hearing administrative appeals from claim denials, acts as a fiduciary within the meaning of ERISA") (emphasis added).

A finding that BCBS is a fiduciary does not end the analysis.  The next question is whether BCBS is seeking "equitable relief" within the meaning of Section 502(a)(3).  In its Amended Complaint, BCBS alleges that it has been harmed by Defendants' breaches of the Provider Agreements and seeks "compensatory damages in an amount in excess of Four Hundred Thousand Dollars in reimbursement of claims paid based on false representation as to the nature of services provided."  Am. Compl., ¶¶ 19, 20 and Prayer for Relief Subpart (a).

In Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Supreme Court defined the scope of "equitable relief" available under Section 502(a)(3) of ERISA in the context of a benefit plan's claim for reimbursement of overpaid benefits.  In particular, the plan paid medical bills on behalf of a beneficiary and, after the beneficiary recovered in tort from a third party for her injuries, the plan sought to recover from the beneficiary the amounts it had paid for her medical bills.  The Supreme Court held that such an action was not a claim for equitable relief under ERISA.  First, the Court stated that the term "equitable relief" in Section 502(a)(3) refers to those categories of relief that

were typically available in equity and generally noted that suits seeking to compel a defendant to pay money to a plaintiff are suits for money damages not actionable in equity.  Id. at 210.  It described a claim for money damages as the classic form of legal relief.  Id.  Second, the Supreme Court rejected the plan's argument that it was seeking equitable restitution and held that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  Id. at 214.  Because the specific funds in dispute had been dissipated and were not in the beneficiary's possession, the Court held that the plan's claim was not authorized by Section 502(a)(3) of ERISA.  It summarized its rationale as follows:

> The basis for [the plan's] claim is not that [the beneficiary] hold[s] particular funds that, in good conscience, belong to [the plan], but that [the plan] [is] contractually entitled to *some* funds for benefits that [it] conferred.  The kind of restitution that [the plan] seek[s], therefore, is not equitable-the imposition of a constructive trust or equitable lien on particular property-but legal-the imposition of personal liability for the benefits that [it] conferred upon [the beneficiary].

Id.  Subsequently, in Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356 (2006), the Supreme Court reaffirmed the definition of equitable relief applied in Knudson.  However, the Court reached the opposite result because the plan's claim in Sereboff sought to recover "specifically identifiable" funds in the beneficiary's possession.  Id. at 362-363.  Although the plan "alleged breach of contract and sought money, to be sure,...it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [beneficiary's] assets generally, as would be the case with a contract action at law."  Id. at 363.

In this case, BCBS is plainly seeking "compensatory damages" and is not seeking to recover any specifically identifiable fund.  See Union Labor Life Ins. Co. v. Olsten Corp. Health & Welfare Benefit Plan, 617 F. Supp. 2d 131, 136 (E.D.N.Y. 2008) ("A plaintiff cannot seek restitution under section 502(a)(3) without identifying a particular fund in defendant's possession distinct from its general

assets."). The damages sought by BCBS from Defendants represent allegedly wrongful payment for services over a six-year period. The fact that BCBS is not seeking to recover an identifiable "fund" is further supported by Defendants' own counterclaims (Document Nos. 10 and 11) which challenge BCBS's alleged "self-help" attempt to recoup its claimed damages by unilaterally withholding payments for unrelated, current services provided by Defendants to BCBS subscribers.

Even if the relief sought by BCBS were considered to be equitable, it is not relief aimed at redressing a violation of or enforcing the terms of an ERISA plan. See Med. Benefits Adm'rs of MD, Inc. v. Sierra R.R. Co., No. CIV S-06-2408 FCD DAD, 2007 WL 2914824 at *5 (E.D. Cal. Oct. 5, 2007) ("In order to sustain a claim under section 502(a)(3), a plaintiff must...[be] seeking equitable relief to redress violations or enforce provisions of the plan."). Thus, BCBS could not have stated its claim in Count I under Section 502(a)(3) of ERISA.

BCBS's Amended Complaint brings state law contract and tort claims against Defendants which do not allege violations of or seek to enforce the provisions of an ERISA-regulated benefit plan. In particular, BCBS's contract claims (Count I) arise solely out of alleged breaches of the Provider Agreements. BCBS claims that the Provider Agreements obligated Defendants "to use and apply accurate CPT codes" when making claims to it and that Defendants breached by submitting claims "using CPT Codes that do not accurately state the service for which the claim was made." Am. Compl., ¶¶ 10 and 12. Since this specific contract claim arises solely out of the Provider Agreements, it is not a claim cognizable under Section 502(a)(3) of ERISA.

The facts of this case are somewhat unique and neither side to this dispute has cited any ERISA preemption cases that are directly on point. The closest case I could find is Blue Cross and Blue Shield of Alabama v. Weitz, 913 F.2d 1544 (11th Cir. 1990). In Weitz, Blue Cross brought suit against a psychologist to recover wrongful claims payments. For a five-year period, the psychologist submitted

-8-

claims to Blue Cross and received payment for psychotherapy provided to beneficiaries of a health plan administered by Blue Cross. However, the services were actually performed by a social worker whose name did not appear on the claim forms as the treatment provider and who did not qualify as an eligible provider under the terms of the health plan. Blue Cross sued under Section 502(a)(3) of ERISA seeking restitution from the psychologist. The psychologist challenged the Court's subject matter jurisdiction and contended that Blue Cross's claim was not cognizable under Section 502(a)(3).

The Eleventh Circuit agreed with Blue Cross and held that its claim constituted an equitable action to recover benefits wrongfully paid which fell within the clear grant of federal subject matter jurisdiction under Section 502(a)(3) of ERISA. However, in a twist, Weitz actually supports Blue Cross's position in this case that its claim is not one cognizable under ERISA. First, Weitz was decided prior to the Supreme Court's decision in Knudson and Sereboff which more narrowly interpreted the meaning of "equitable relief" under Section 502(a)(3). As noted above, Knudson and Sereboff now make clear that the relief sought by BCBS in this case is not equitable. Second, Weitz did not involve a claim under a provider agreement between an insurer and a provider as in this case. Rather, Blue Cross's claim in Weitz was premised on a violation of the terms of an ERISA-regulated health plan which only covered services performed by a "physician."

Although not directly on point, BCBS cites several cases which generally support a finding that its state law claim for breach of the Provider Agreements is not preempted by ERISA. For instance, in Lone Star OB/GYN Assoc. v. Aetna Health, Inc., 579 F.3d 525 (5th Cir. 2009), the Fifth Circuit concluded that a state law contract claim brought by a health care provider against an insurer under a provider agreement was not preempted by ERISA and thus it ordered remand of the case to state court. Because the provider's claim did "not require any kind of benefit determination under the ERISA plan" and "arose out of the independent legal duty" contained in the provider agreement, the Court held that

the claim was not preempted by ERISA.  Id. at 530-531.  Similarly, in Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 402-404 (3rd Cir. 2004), the Third Circuit concluded that a state law contract claim brought under a subscriber agreement was not preempted by ERISA where (1) the claims arose from the terms of a contract independent of the benefit plan; (2) the participants and beneficiaries of the plan were not parties to the contract or the dispute; and (3) the dispute required an interpretation of the subscriber agreement and not the plan.  See also Blue Cross of California v. Anesthesia Care Assoc. Med. Group, Inc., 187 F.3d 1051 (9th Cir. 1999) (fee dispute between health care providers and insurer alleging breach of provider agreements not preempted by ERISA "where the meaning of a term in the Plan is not subject to dispute.").

Defendants' attempt to characterize this dispute as an "adverse benefit determination" requiring interpretation of an ERISA-regulated plan is unconvincing.  First, the ERISA regulations define an "adverse benefit determination" (29 C.F.R. § 2560.503-1(m)(4)) as including the failure to "cover" an item or service and establish a "claims procedure" applicable to "claims for benefits by participants and beneficiaries (hereinafter referred to as claimants)."  See 29 C.F.R. § 2560.503-1(a).  The regulations also separately define the term "health care professional" (29 C.F.R. § 2560.503-1(m)(7)) which would apply to Defendants.  The regulations contain detailed procedures applicable to "claimants" and do not apply to claims made by health care professionals directly against an ERISA plan.[3]

Defendants argue that the applicability of ERISA to BCBS's claims in Count I is "conclusively demonstrated" by Cherene v. First Am. Fin. Corp. Long-Term Disability Plan, 303 F. Supp. 2d 1030 (N.D. Cal. 2004).  However, Cherene is distinguishable and does not support Defendants' argument that

___

[3] A "health care professional" is permitted to act as "the authorized representative" of a claimant in the case of a claim involving urgent care.  29 C.F.R. § 2560.503-1(b)(4).  An "urgent care" claim is one requiring expedited consideration because application of the "non-urgent care" claim time periods could "seriously jeopardize the life or health of the claimant" or result in "severe pain" to the claimant.  29 C.F.R. § 2560.503-1(m)(1)(i).  Still, under such circumstances, the health care professional is not acting as the "claimant" but in the capacity of an "authorized representative" – a scenario which is simply not applicable here.

BCBS's claims alleging breach of the Provider Agreements fall under the scope of Section 502(a)(3). In Cherene, the plaintiff, a plan participant, sued the plan challenging the suspension of her disability benefits.  The plan suspended benefits because it claimed that the participant had been overpaid due to a failure to offset or reduce her benefits as required by the plan by the amount of other disability income payments received such as workers' compensation or Social Security Disability Insurance benefits. Further, the plan's terms gave it the "option" to reduce or discontinue future benefits to recover any overpayment.  Id. at 1032.  Although the Court concluded that the plan's reimbursement claim was an "adverse benefit determination" triggering the procedural requirements of 29 U.S.C. § 1133, id. at 1036 n.1, there is a critical difference between this case and Cherene.  Cherene involved a dispute between an ERISA plan and a participant or beneficiary of such plan regarding their respective rights and obligations under the plan.  This case, on the other hand, involves a dispute between an insurer and a health care provider regarding their respective rights and obligations under a provider agreement not regulated by ERISA.

In summary, Defendants have not met their burden of making a "colorable" showing that BCBS's claims in Count I are completely preempted by ERISA.  Although BCBS is acting in a fiduciary capacity in pursuing Count I, it is seeking money damages and not equitable relief and it is not alleging a violation of ERISA or the terms of an ERISA plan.  Thus, its claim is not one cognizable under 29 U.S.C. § 1132(a)(3).

Finally, BCBS moves pursuant to 28 U.S.C. § 1447(c) for a discretionary award of attorneys' fees and costs incurred as a result of Defendants' improvident removal of this case.  In Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005), the Supreme Court held that "[a]bsent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."   Here, BCBS has not shown that Defendants lacked an

"objectively reasonable" basis for removing the case to this Court and, as previously noted, the facts of this case are somewhat unique and neither side was able to cite any ERISA preemption cases which are directly on point.

### Conclusion

For the reasons discussed above, I recommend that Plaintiff's Motion to Remand this Case to Rhode Island Superior Court (Document No. 6) be GRANTED and that Plaintiff's accompanying request for a discretionary award of attorneys' fees and costs be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 30, 2009