UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BLUE CROSS & BLUE SHIELD OF
RHODE ISLAND,

    Plaintiff,                              C.A. No. 09-317L

JAY S. KORSEN and IAN D. BARLOW,

    Defendants.

**MEMORANDUM AND ORDER**

RONALD R. LAGUEUX, Senior United States District Judge.

    This matter is before the Court on Defendants' objection to Magistrate Judge Almond's Report and Recommendation ("R & R"), recommending that this lawsuit be remanded to State court. Plaintiff Blue Cross & Blue Shield of Rhode Island (hereinafter "Blue Cross") filed its Amended Complaint in Rhode Island Superior Court in June 2009, alleging four state common law causes of action. Defendants then removed the case to this Court, claiming that it was a federal matter. Arguing that this Court lacks subject matter jurisdiction, Blue Cross moved to remand the case to State court. Magistrate Judge Almond heard Plaintiff's motion, along with Defendants' objection, and issued his R & R in November 2009.

    After reviewing this matter, this Court rejects the R & R and determines that federal subject matter jurisdiction does exist for the reasons explained below. Consequently, Plaintiff's Motion to Remand is denied.

## Background

Plaintiff Blue Cross is a Rhode Island health insurance company. Defendants are two health care providers, who formerly shared a practice: Jay S. Korsen is a chiropractor and Ian D. Barlow, an occupational therapist. According to Blue Cross, it entered into two separate Provider Agreements with Korsen and Barlow in 2001 and 2003, respectively, for them to provide medical services to Blue Cross subscribers. According to the Provider Agreements, Defendants were to bill Blue Cross for their services using an agreed-upon code ("CPT Code") to indicate which service was provided; Blue Cross would then compensate Defendants according to a schedule of discounted rates. Blue Cross alleges that Defendants purposely miscoded services which resulted in Blue Cross paying them over $400,000 for services that were not covered by "the applicable BCBSRI subscriber contracts." (Amended Complaint, ¶ 7). Specifically, Blue Cross alleges that, between 2003 and 2009, Defendants treated patients using motorized massage equipment, but then coded the services as "mechanical traction" in order to obtain compensation for an unauthorized service.

Blue Cross discovered the alleged miscoding when it conducted an audit of Korsen's practice ("Back to Health Chiropractic"), which consisted of a visit to Defendants' office in March 2009. According to the follow-up letter sent by Blue

Cross to Defendants on April 20, 2009, "The meeting involved a discussion of your operations, a tour of your facility and the rendering of Mechanical Traction as it related to the high volume of claims submitted by Back to Health Chiropractic." Blue Cross explained that the information provided by Defendants concerning their massage equipment had been reviewed by its medical advisors. The letter continued:

> The result of this review is that both the Omega Massage Chair and the Thomas Tables do not render traction. Although the manufacturers may label this "intermittent segmental traction," medically, it is not traction... [T]his service is not medically necessary as there is a lack of published peer-reviewed literature to support its efficacy.

Blue Cross' Response to Defendants' Objection, Doc. # 33-1, p. 41. Blue Cross stated its conclusion that the miscoding was an "intentional misrepresentation" and demanded repayment of $412,952.93. According to Defendants, an attachment to the letter listed each instance when a bill had been submitted to Blue Cross for mechanical traction - charges which pertained to 1,561 patients in many separate health care plans offered by different employers, all administered by Blue Cross.[1] Defendants allege that they tried to get Blue Cross to reconsider its

---

[1] There is no dispute that many of these plans are "employee welfare benefit plans" as that phrase is defined by the Employee Retirement Income Security Act, 29 U.S.C. § 1002(1), commonly called ERISA.

demand, by appealing both to Blue Cross directly and to the employers of their patients. They claim that Blue Cross ignored these efforts and instead began to recoup the disputed funds by withholding payment on other unrelated claims subsequently submitted by Defendants.

The dispute culminated when Blue Cross filed the present lawsuit. Count I alleges that Defendants breached their Provider Agreements, by submitting claims for unauthorized services, and, in the case of Defendant Korsen, by terminating the Provider Agreement without proper notice to Blue Cross. Count II is for fraud based on false and fraudulent claims submitted by Defendants for compensation. In Count III, Blue Cross alleges that Defendant Korsen made defamatory statements accusing Blue Cross of embezzling funds from him. Count IV states a claim for tortious interference with advantageous relationships, alleging that Korsen communicated directly with entities that do business with Blue Cross in an effort to damage its business relationships. Defendants removed the case to this Court arguing that Blue Cross' state law claims for breach of contract and fraud (Counts I and II) are completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S. C. § 1001, *et seq.* Defendants then answered the complaint in this Court, and filed counterclaims asserting that Blue Cross' retention of compensation allegedly owed to them for unrelated services

rendered to other patients constituted a violation of ERISA §§ 1132(a)(3) and 1133. Blue Cross has moved to dismiss the counterclaims; however, that Motion is not presently before the Court.

## Standard of Review

This Court has the authority to review a ruling or recommendation of a magistrate judge pursuant to Fed. R. Civ. P. 72. If a magistrate judge rules on an issue that is not dispositive of a litigant's case in chief, and there is an objection, a district judge may review the ruling to determine if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). If the magistrate judge issues a report and recommendation on a dispositive motion, the district judge's review of the contested matter will be *de novo*. Fed. R. Civ. P. 72(b)(3). The issue of whether to characterize a magistrate judge's ruling (or recommendation) on a motion to remand as dispositive or non-dispositive has divided courts across the country, and has not been explicitly resolved by the First Circuit. Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13 (1st Cir. 1992). Before Gordon reached the appellate court, this writer had determined that the magistrate judge's remand ruling in that case was non-dispositive. On appeal, the First Circuit concluded it did not have jurisdiction to review the ruling. Id.; see also Cok v. Family Court of R.I., 985 F.2d

32, 34 (1st Cir. 1993). In <u>Delta Dental of R.I. v. Blue Cross & Blue Shield of R.I.</u>, 942 F. Supp. 740, 745 (D.R.I. 1996), this writer again held that "a motion to remand is nondispositive and can be determined by a magistrate judge by final order." This holding has not been disturbed by the First Circuit. At any rate, in the present case, employing either a *de novo* or 'clearly erroneous' standard of review, the R & R must be rejected because Defendants have made a colorable showing that federal subject matter jurisdiction exists for Plaintiff's complaint.

Removal of a case to federal court from state court, pursuant to 28 U.S.C. § 1441(b), is proper where the federal court has original subject matter jurisdiction over the lawsuit, founded on federal law.[2] When a plaintiff counters removal with a motion to remand, under 28 U.S.C. § 1447(c), the defendant has the burden to establish federal jurisdiction. <u>Danca v. Private Health Care Systems, Inc.</u>, 185 F.3d 1, 4 (1st Cir. 1999). According to <u>Danca</u>, defendants must make a "colorable" showing that federal jurisdiction exists. <u>Id.</u> Ordinarily, a court must look at the plain language of the well-pleaded complaint to determine if a question of federal law is implicated. <u>Franchise Tax Bd. v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 10 (1983). However, in certain instances, such as the present case

---

[2] Defendants do not allege diversity of citizenship, a separate ground for removal under 28 U.S.C. § 1332.

where the preemptive powers of ERISA are at issue, the analysis becomes more complex, as explained herein. Danca, 185 F.3d at 4.

### ERISA preemption

ERISA derives its preemptive power from section § 514, 29 U.S.C. § 1144(a). It will preempt or "supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." This means that, when charged with a state cause of action that 'relates to' an employee benefit plan, a defendant may raise ERISA § 514 preemption as an affirmative defense. This type of preemption is sometimes referred to as "conflict preemption." See Children's Hospital Corp. v. Kindercare Learning Centers, Inc., 360 F. Supp. 2d 202, 207 (D. Mass. 2005).

If a court with proper jurisdiction, including a state court, determines that ERISA does indeed preempt the state cause of action, that court must dismiss the state claim. Id. However, § 514 preemption does not provide a basis for federal jurisdiction, and consequently does not provide a basis for removal. Id.; see also Morris v. Highmark Life Insurance Co., 255 F.Supp.2d 16, 20 (D.R.I. 2003); Harvey v. Life Ins. Co. of North America, 404 F.Supp.2d 969, 973 (E.D.Ky. 2005); Pascack Valley Hosp. v. Local 464A UCFW Welfare Reimb. Plan, 388 F.3d 393, 398 (3rd Cir. 2004).

What is at stake before the Court today is federal jurisdiction. Consequently, the parties' arguments concerning whether or not the claims in the complaint are preempted because they "relate to" an employee benefit plan are not relevant at this point in the analysis. Moreover, the issue of whether or not Plaintiff's claims are preempted is not before the Court. ERISA preemption is separate and distinct from the concept that is central to the present jurisdictional analysis, which is known as "complete preemption." The Court will return to the doctrine of complete preemption after an additional explanatory digression concerning another topic that is not determinative of the present analysis.

## Standing

The present dispute is not about standing. Plaintiff argues that its claims could not be brought pursuant to ERISA because it does not have standing to sue under the statute. Civil claims to enforce the provisions of ERISA may be brought pursuant to section 502, 29 U.S.C. § 1132. Under section 502(a)(1), civil actions may be brought by ERISA Plan "participants" or "beneficiaries." Section 502(a)(3) permits a participant, beneficiary or fiduciary to bring a suit to enjoin any practice which violates the statute or the ERISA Plan, or to obtain equitable relief. 29 U.S.C. § 1132(a)(3). In its Motion to Remand, Blue Cross tries to evade its customary identity as an

ERISA fiduciary by pointing out that it is not a fiduciary *vis a vis* the Defendants.

ERISA defines a 'fiduciary' as one who "exercises any discretionary authority or discretionary control respecting the management" of an ERISA plan, or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The conduct that forms the focus of Blue Cross' complaint demonstrates its fiduciary role in the various health plans it administers in Rhode Island. Based on the allegations in the Amended Complaint, it appears that Blue Cross defines permissible, compensable medical services; it determines which services are medically necessary for its subscribers; and it audits medical providers to determine if their services are medically necessary and generally accepted in the medical community. This is the conduct of an ERISA fiduciary in connection with an ERISA plan. Whether this conduct is directed at, or has an impact upon, subscribers or other parties within the complex ERISA administrative mechanism is not a distinction drawn by the statute. See Aetna Health Inc. v. Davila, 542 U.S. 200, 220 (2004) ("Classifying any entity with discretionary authority over benefits determinations as anything but a plan fiduciary would thus conflict with ERISA's statutory and regulatory scheme."); Blue Cross & Blue Shield of Alabama v. Sanders, 138 F.3d 1347, 1352 n.4 (11th Cir. 1998).

## ERISA's superpower: complete preemption

The sole issue before the Court is federal subject matter jurisdiction, and the extraordinary power of ERISA to create federal subject matter even when it is not apparent on the face of the complaint. In <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58 (1987), the Supreme Court held that the preemptive powers of ERISA were such that it could not only supercede related state claims under § 514, but that it could also displace or replace those state claims by converting a state claim into an ERISA claim under § 502. <u>Id.</u> at 60. In <u>Taylor</u>, the Supreme Court compared ERISA preemption to the preemptive powers included in the federal Labor Management Relations Act, 1947, 29 U.S.C. § 185, and concluded that Congress intended ERISA to operate with the same potency:

> In this case, however, Congress has clearly manifested an intent to make the causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court... Accordingly, this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, "arise[s] under the ... laws ... of the United States," 28 U.S.C. § 1331, and is removable to federal court by the defendants, 28 U.S.C. § 1441(b).

<u>Id.</u> at 66-67. The next question is then: what sort of state claim falls "within the scope" of § 502(a)'s civil enforcement provisions?

-10-

### *Within in the scope of ERISA*

The Supreme Court in <u>Aetna Health Inc. v. Davila</u> has provided us with a test to govern this analysis. A state law claim is completely preempted, that is, converted from its original terms to a federal claim under ERISA's § 502(a), 1) if, initially, it could have been brought under § 502(a), and 2) if there is no other independent legal duty violated by defendant's actions. 542 U.S. at 210. The First Circuit, in the previously-cited <u>Danca v. Private Health Care Systems, Inc.</u>, held that the claims of a beneficiary of an ERISA plan were completely preempted because they challenged the Plan's administrator's evaluation of the disputed medical treatment:

> What matters, in our view, is that the conduct was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan. As such, any state-law-based attack on this conduct would amount to an 'alternative enforcement mechanism' to ERISA's civil enforcement provisions...

185 F.3d at 6. While <u>Danca</u> is still good law, the Court notes that it was decided before the Supreme Court's decision in <u>Davila</u>. The plaintiffs in <u>Davila</u> sued their Plan Administrators for their refusal to cover medical treatments recommended by the plaintiffs' doctors. Plaintiffs brought their lawsuits pursuant

to state statute, the Texas Health Care Liability Act ("THCLA").[3] Because THCLA requires that managed health care entities exercise a duty of ordinary care in treatment decisions, the Davila plaintiffs argued their Plan Administrators violated a legal duty that was independent of ERISA and the terms of their Plans. To conduct its analysis, the Supreme Court examined plaintiffs' claims, the Texas statute, and the Plan documents. 542 U.S. at 211. The Supreme Court concluded that, despite the requirements of THCLA, a managed health care entity would have no liability if it denied coverage for a treatment that was not covered by the health care plan it was administering, regardless of the medical merit of the treatment. The Court reasoned that the managed care entity's denial would not be the proximate cause of a patient's injuries; instead the Plan's failure to cover the treatment would be the proximate cause. Aetna Health, Inc. v. Davila, 542 U.S. at 213.

> Thus, interpretation of the terms of respondents' benefit plans form an essential part of their THCLA claim, and THCLA liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans. ...
> Hence, respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.

---

[3] Tex. Civ. Prac. & Rem. Code Ann. §§ 88.001-88.003 (West 2004 Supp. Pamphlet).

Id. at 213-214.

In the present case, the crux of the dispute between the parties likewise involves a benefits determination: whether or not Blue Cross concludes that Defendants' services constitute mechanical traction, and whether or not Blue Cross concludes that those services are covered by the applicable ERISA Plan. Blue Cross alleges that Defendants breached their Provider Agreements by their wilful failure to use proper coding. However, it is undeniable that what constitutes proper coding derives from Blue Cross' right to pay only for services covered by the ERISA Plans. Paragraph I.A. of Defendant Korsen's Provider Agreement, the "Participating Physician Agreement," describes "Covered Services" as: "those services which are (i) medically necessary, ....and (vi) described as 'covered services' in accordance with the respective agreements from time to time in effect between the Corporation [Blue Cross] and its Subscribers..." Response of Blue Cross Blue Shield to Defendants' Objection, Doc. # 33-1, p. 2. The same language appears in Defendant Barlow's "Participating Provider Agreement." Doc. #33-1, p. 11. The "Physician/Provider Agreement Administrative Policies," which are incorporated into the Provider Agreements, defines "Covered Health Service(s)," as:

> Those Medically Necessary health care
> services and benefits which are covered in
> whole or in part under the terms of the
> applicable Blue Cross Subscriber

>Agreement(s), which is incorporated herein by reference.

Doc. # 33-1, p. 22. The Provider Agreements set forth terms and impose obligations and legal duties upon both Blue Cross and the Defendants. However, in the area of covered medical services, these contracts do not impose an <u>independent</u> legal duty upon Defendants because it is impossible to separate the duties in the Provider Agreements from those set forth in "the applicable Blue Cross Subscriber Agreement(s)."

### *Other case law*

In two similar, unpublished decisions from other jurisdictions, courts have arrived at the same conclusions. In a Memorandum Opinion and Order entered by Senior U.S. District Judge Henry Wilhoit, Jr., in the case of <u>Porter v. Anthem Health Plans of Kentucky, Inc.</u>, C.A. No. 10-8-HRW (E.D. Ky. March 18, 2010), the Court denied Porter's motion to remand after Anthem removed the case to federal court. Porter is a chiropractor who sued Anthem for damages in connection with Anthem's alleged wrongful recoupment of benefit payments made to Porter before Anthem determined that the benefits were not properly payable under the terms of the pertinent subscriber agreements. The Court rejected Porter's argument that his claim was a state-law breach of contract claim, and observed that, "Absent ERISA, there would be no obligation between the parties." Slip op. at 5. The

Court continued:

> As in <u>Davila</u>, that Porter and his practice have a provider contract with Anthem does not, in and of itself, create an independent legal duty for Anthem to make payments to Porter. What is payable, and more importantly, what is not is defined by the terms of the benefit plans, and, thus, governed by ERISA.

Slip op. at 5.

In a similar case, a group of chiropractors and chiropractic associations[4] sued Blue Cross Blue Shield of America, as well as numerous state Blue Cross and Blue Shield organizations, <u>Pennsylvania Chiropractic Assn., et al., v. Blue Cross Blue Shield Assn.</u>, Slip Copy, 2010 WL 1979569 (N.D. Ill. 2010). Again, the plaintiffs allege that the Blue Cross organizations ("Blue Cross") improperly recouped money paid to them for medical services subsequently disallowed by Blue Cross. Blue Cross moved to dismiss the lawsuit, based, *inter alia*, on the grounds that there was no viable ERISA claim. In denying Blue Cross' motion to dismiss, the Court noted plaintiffs' allegations that Blue Cross had the authority to make decisions about what medical services were covered and how much to reimburse the medical providers.

> Though the insurance coverage may have been provided by an employee benefit plan, it appears from plaintiffs' allegations that the

---

[4] The large plaintiff group includes both defendants herein.

> BCBS entities had the sole authority to make
> the decisions that give rise to the
> plaintiffs' claims. They are therefore
> clearly intertwined with the plans
> themselves.

Slip op. at 10.

In the case before the bench, Blue Cross, as a fiduciary, can make its claim under § 502(a)(3), which permits a participant, beneficiary or fiduciary of an ERISA plan to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief..." 29 U.S.C. § 1132(a)(3). The Court holds further that there is no independent legal duty controlling Defendants' conduct herein; because, while the Provider Agreements do impose duties on Defendants, these duties are not independent of the terms of the ERISA plans. Consequently, the Court holds that Blue Cross' Count I for breach of contract, alleging that Defendants breached the Provider Agreements by submitting claims using improper CPT codes and submitting claims for services that were inappropriate or not medically necessary, and Count II for fraud are completely preempted by ERISA. The Court converts these claims to a federal ERISA § 502(a)(3) claim.

As part of Count I, Blue Cross also alleges that Defendant Korsen breached the Provider Agreement by terminating the Provider Agreement without providing 60 days notice. This

portion of the state-law breach of contract claim is not subject to ERISA's complete preemption and thus is unaffected by the Court's decision today.

Though the Court's ruling limits Blue Cross' potential recovery, this holding is consistent with the legislative aims identified by the Supreme Court in <u>Davila</u>: "The limited remedies available under ERISA are an inherent part of the 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans."  542 U.S. at 215 (quoting <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 55 (1987).  Moreover, the Congressional objectives of consistency in regulation and uniform administration of ERISA plans are met.

> Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim.

542 U.S. at 216.

### The R & R

The R & R is clearly erroneous because it concludes that Blue Cross' breach of contract claim is not completely preempted because it does not seek equitable relief, the only remedy available to Blue Cross under ERISA.  The R & R then cites two recent Supreme Court cases wherein the Court discussed in depth

-17-

the equitable relief available to ERISA litigants, which is limited to restitution: <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002) and <u>Sereboff v. Mid Atl. Med. Servs.</u>, Inc., 547 U.S. 356 (2006).

The R & R is incorrect on two grounds. First, because Blue Cross is expressly seeking injunctive relief, and is, at least implicitly, seeking restitution, both of which are equitable remedies. However Blue Cross chooses to characterize the relief that it seeks, it is essentially seeking the return of funds it expended, which is restitution. <u>See</u> <u>Knudson</u>, 534 U.S. at 214 ("Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.") As the <u>Sereboff</u> Court subsequently observed, just because a plaintiff seeks damages for breach of contract is not sufficient to prove that the relief sought is not equitable. 547 U.S. at 363.

On the other hand, even if it is assumed that the Blue Cross Amended Complaint seeks damages, which may be unavailable under <u>Knudson</u> and <u>Sereboff</u>, the remedy that Blue Cross seeks is not determinative or even relevant to the determination of federal subject matter jurisdiction; "all that matters is that the *claim* be within the scope of § 502(a)." <u>Danca v. Private Health Care Systems, Inc.</u>, 185 F.3d at 5 n.4 (emphasis in original) (citing

Pilot Life, 481 U.S. at 54-55).

## Conclusion

Therefore, the Court rejects the R & R and denies Plaintiff Blue Cross and Blue Shield of Rhode Island's motion to remand this matter to State court. In addition, the Court denies Plaintiff's motion for an award of attorneys' fees, as recommended in the R & R.

Counts I and II of Plaintiff's Amended Complaint are hereby converted to a single ERISA count for enforcement of the Plans, under 29 U.S.C. 1132(a)(3). Pursuant to 28 U.S.C. § 1367, the Court shall exercise supplemental jurisdiction over Counts III and IV, and over that portion of Count I that alleges that Defendant Korsen breached the Provider Agreement by improperly terminating the Agreement. Moreover, if some of the disputed medical services were provided to patients who are not subject to ERISA plans, the Court shall exercise supplemental jurisdiction over those issues as well.

Therefore this case will proceed in this Court.
It is so ordered.

/s/ Ronald R. Lagueux
Ronald R. Lagueux
Senior United States District Judge
October, 27 2010